Good morning. David Adida of the AG's office on behalf of the appellants. I'm sorry. Again, David Adida on behalf. Speak up sir. If you put the thing down and then chalk over it, it doesn't work. Put it up near your mouth. Right here. Yes. Perfect. And use your outside voice as I'm telling people. Okay. You're a lawyer. You have to project. Okay, your honor. That wasn't, that wasn't good. Okay, your honor. Okay, your honor. Okay. Well, this case, what does this case? What's your name again? David Adida. All right. Of the Department of Justice on behalf of the appellant. This case involves the application of the qualified immunity doctrine in the context of a substantive due process claim wherein the undisputed facts, at least from our perspective, show that the law was not clearly set at the time of this incident that a reasonable officer such as Officer Howard would have known that his action clearly violated the rights of the appellee, Mr. Fernandez. We also believe that the undisputed facts. There was a couple of things. Okay. Yes. Mr. Fernandez obviously was intoxicated. I mean, he was driving like a bat out of hell, 120 miles an hour or whatever. He was in several situations. We have to give him all inferences. And the officer testified that he is trained in these. The officer was clearly wrong. The man was intoxicated. But that being said, what's the CHP policy in these kinds of situations? We know that Officer Howard was trained in detecting intoxication people, but was he trained in handling these situations too? Yes, your honor. He was trained in handling these situations. By this situation, what I mean is we have a motorist, a motorcyclist who is going in excess of 100 miles an hour on the freeway splitting lanes. Sorry to say, in his training, that is something that motorcyclists do all the time, especially those motorcyclists who are riding super bikes, which is the type of motorcycle that the plaintiff was riding there. I think we've all had experience with splitting lanes. Yes, your honor. With motorcyclists splitting lanes. Is it against the law yet? Not yet. Well, it's not against and it's not for, but it's neither here nor there. But the point is, all of these motorcyclists who split lanes does not equate to them being drunk or having imbibed alcohols before doing so. For some of them, it's just a matter of the beauty of riding a motorcycle. So this is what happened to Officer Howard. He sees the motorcyclist on Highway 5, on the 5 freeway. He turns on his overhead lights. The motorcyclist responds to that, to those warnings, and he asks the motorcyclist to get off the freeway after the 22 interchange. Again, nothing unusual happens. The motorcyclist followed the directions of the officer off of the freeway, gets on town and country road. Quiet neighborhood. Again, nothing unusual. The officer walks toward the motorcyclist and asks him, driver's license, paperwork. Those are given to the officer. Again, no problem. The officer asks him, can you please remove your helmet? That's done. No problem. At this point, there is no indication that the motorcyclist is drunk or under the influence of alcohol. However, based on his training, the officer asks him, have you had any alcohol tonight? And the thing about this litigation is that there is no evidence whatsoever from the appellee that in fact, he did not seek to mislead the officer at the scene of this stop about whether or not he was inebriated. Does he agree that he said he had not been drinking? Your Honor, there is one sentence that has been said by the appellee about this whole incident and I'm going to quote it verbatim. Had the officer asked me, provided me a ride, I would have taken it. That is all he says about this incident. He doesn't say that he was drunk. He doesn't say that he was acting impaired at the scene of this stop. He doesn't say that he was showing the telltale sign of someone who is obviously under the influence of alcohol. Let me ask you something. I seem to remember something in the evidence that the officer said would he like, would Fernandez like him to call a taxi? Correct. Fernandez refused that. Correct, Your Honor. Is there a dispute about that? Again, there's no dispute because there's no evidence contradicting it. So the appellee Fernandez was saying, I won't pay for a taxi, but if he'd given me a ride home for free, I would have taken it. And that there's clearly established law that failure to give a free ride is a violation of constitutional right? No, Your Honor. There is no duty on behalf of a CHP officer to babysit a criminal suspect and drive him in his car to his home. There is no such duty in law. Is there a duty that he should have arrested him and put him in jail? No. There is no such duty either because then we're putting the onus on the officer to be omnipresent, all knowing that in fact this individual is under the influence of alcohol. Remember, the facts from the officer's perspective are just what I stated. He asked this individual to get off the freeway. He did. There was no issue. He asked him for his paperwork. No issue. He asked him to take off his helmet. No issue. Okay, let's talk about, I think there was some discussion about, obviously, if you increase the danger of someone, you took the bike because the guy was, he was unlicensed or whatever or he didn't have the right class or something. Correct. He wasn't supposed to drive a motorcycle. Well, I mean, I think it's, I think probably, you know, I mean, there, an inference from this, if the officer had thought he was drunk, he probably would have been happy to arrest him with that driving conduct, but... Absolutely. But that being said, there, there is a case out there where a woman was left and was raped. It was quite late at night and it was in a bad area of town and so it was, the officer was denied qualified immunity, I think, because he increased the risk to the individual. So what do you, how do you, how does that fit into this? Your Honor, the facts of this case are even worse than what you've just stated. In Woods versus Ostrander, the motorist was stopped in an area of town outside of Tacoma, Washington, that had the highest serious criminal activity in the county. You say this case is worse than that case? No. The Woods versus Ostrander is much worse than this case. And so the arrest was made at about 2 o'clock in the morning in this deserted area. The lady was a passenger. She didn't do anything wrong. She was just a passenger in a car being driven by someone who was inebriated. She asked the officer, I'm five miles away from my home, how do you expect me to go home? The officer basically said, sorry, there's nothing I can do for you. And so the poor lady then walks towards her home within a quarter of a mile because it's freezing, 2 o'clock in the morning, she's only wearing a blouse and jeans. She gets a ride. As a hitchhiker, unfortunately, she's raped and she sues the officer. Obvious application of the doctrine, which is not the case in our scenario. We have an officer who is being duped by the suspect into believing that he's not drunk. And that's easier said, that's easier done than said, Your Honor, because the officer is not having a conversation with the suspect the whole time at the scene of the stop. The officer basically speaks, asks for the paperwork, then he needs to go back to his car to check on the license and to write the ticket. So the interaction between this individual and the officer is short. And during that short period of time, by nature it is, because the officer needs to do his job. And so during this short conversation, the officer looks at the suspect and says, okay, well, he seems fine and on top of everything else, he told me that he didn't drink. Okay. So now, in any other context... Let me ask you, Mr. Adida. When the officer talked to Mr. Fernandez, did he find out where Mr. Fernandez lived and how far the site of the arrest was from where the man said he lived? He found out the address, because the address is on the driver's license. How far is the address from the point of arrest? Your Honor, it's impossible to ask a CHP officer to make the calculation as to where... I didn't ask for him to make the calculation. I'm asking for you to make the calculation. Oh, okay. Then I'll give it to you, Your Honor. By surface street, it's 4.7 miles. But in this case, for some reason, for some reason, unknown, completely unforeseeable, instead of taking surface street, the suspect decided, hey, you know what? I'm just going to get back on the freeway and run. Whether or not he was running to... Freeway or SR-22? I'm sorry. I'll call it a freeway. It is SR-22. And so he gets off town and country, runs on the on-ramp, and starts running on the freeway. Completely unexpected, unforeseeable. And the district court remarked that it is up for the jury to decide whether or not to let the officer put him in a worse shape. Well, would Mr. Fernandez have a better case if he said to the officer, I'm drunk and so I can't walk home? Absolutely, Your Honor, because then the officer would have done the tests, the DUI test. If in fact he was drunk, he would have arrested him and then would have taken him to the IRC, the jail, in order to sober up. But unfortunately, that's not the case. What the motorist did is dupe the officer and then, in any other context, this would be called double-dipping. I'd like to reserve a minute. And then, having escaped a DUI citation, having escaped a DUI citation, which would have cost him thousands of dollars and maybe even jail time because of his duplicitous behavior at the scene of the stop, now the appellee is saying, well, wait a second, can you imagine how dumb this officer was for falling for my stratagem? I mean, this guy must have been completely incompetent. Well, you can't have it both ways. You know, if you're going to actively lie to a police officer and as a result escape arrest, you can then, on the other hand, say, well, you know what, fine, I evaded arrest, but I got in trouble and it's because as a result of the officer. That is just not what justice is all about. Thank you. Good morning. Good morning. May it please the Court, Jonathan Falcioni for Daniel Fernandez. One point I would like to address right off the bat is counsel has indicated that my client duped the officer over and over. Well, it does seem no good deed goes unpunished. I mean, he had, your client had been in two locations where people had taken his keys earlier and he got belligerent with them. He somehow got them back. He obviously, and he was a 2-0 sometime later, so he probably was, whether he was on the up or the down, I don't have all that information, but he had plenty in him. So he knows he's been drinking and it's undisputed that he told the officer he hadn't had anything to drink. So, you know, is an officer supposed to arrest someone if they don't have probable cause? Your client drove at 120 miles an hour, lane splitting, didn't hit anyone, didn't hit anyone's mirror or whatever. He did to the officer, did all of that. The officer was wrong. He was drunk. No two ways about it. But some people are pretty good, can do pretty well under the influence of alcohol. Your Honor, I believe that the evidence in the record shows that my client was more drunk than a person could be and still be able to actually dupe the officer. Doesn't that depend on the individual? I mean, if a guy drinks a lot, he can take a lot more and not even show it. Certainly that would be the case, and that would be the subject of expert opinion as to what degrees, but... Well, is it your position that he should have been arrested? That would be one option available to Officer Howard to fulfill his obligation to my client. Can an officer arrest someone if he doesn't believe he has probable cause? That would be a violation. An officer can be wrong, but if he believes he did not have probable cause and he arrested someone and he came in and testified in a motion to suppress, that... A judge would say, well, you can't arrest someone if you don't think you have probable cause. That's what the law says. I believe that the record provides adequate information and evidence that Officer Howard did have probable cause, that he did know that my client was extremely intoxicated. Plaintiff's expert, it's the excerpt of record, page 56, Robert Coding. He's our CHP expert. He said the CHP policy states that reckless driving of high speeds is a good cue that the rider is impaired. So Officer Howard is actually going against the policies of the CHP by stating that the high speeds indicated to him that the driver was not impaired. So your position is that Officer Howard, regardless of the denial by Fernandez, which is undisputed, I take it, that he had been drinking, should have said, anybody who's going this fast, I am required by office policy to give him a field sobriety test? I don't know that I would go as far as saying a field sobriety test, but it's a cue. It should put the officer on notice that maybe I need to do a little bit more of an investigation. What do you mean by a little bit more of an investigation? The man says, I didn't drink. So what little more than a field sobriety test can you give him? Field nose observation from the vehicle to see if he's... So what you're saying is if the vehicle was going 100 miles an hour, that's probable cause to give him a field sobriety test? Not probable cause, but it gives the officer heightened concern or suspicion. Well, it's probable cause to give a ticket, but race car drivers drive really fast and they're not under the influence. I mean, it's hard to drive really fast and not have an accident. I couldn't drive a motorcycle 120 miles an hour. Well, Your Honors, one thing I think is very clear here is that this is a question of fact, not law, as to whether my client duped Officer Howard. And to that point, if my client... There's nothing in the record that directly disputes that Officer Howard asked if he had been drinking, but on the equitable estoppel issue, case law requires that the officer actually believe the person's statement. And I believe... Well, the officer... I find it hard to believe that any officer, if they believed that he was a 2-0 and he was driving like a maniac like this, would put him back on the road. He didn't put him back or would do that, because then he would be sued for anyone that he hurt, including himself. So I think there's a pretty strong inference here. It's the officer's testimony, which is basically, he didn't think he was under the influence, but he's wrong. He's wrong. So what would be... So is there a case out there that when an officer is wrong as to their conclusion and doesn't arrest someone, that that's a constitutional violation? If they don't believe, you know, they don't believe they have probable cause? Well, I think the closest case would be the Mallee v. Briggs case. And there's a statement in there, the qualified immunity standard protects all but the plainly incompetent or those who knowingly violate the law. Our claim thus far has been that Officer Howard knowingly violated the law because of the amount of overwhelming evidence that my client was intoxicated... What law did he violate? I'm sorry? What law did he violate? It was my client's... He got him off the road, he took his vehicle away from him, and offered him a ride home and he said, I don't want it. The law or the right in this case is the liberty interest and bodily integrity. It's a due process claim. Well, he had bodily integrity. He was let go. Well, under the danger creation doctrine... Well, there was a Starbucks right there. There was another store. It was not in a high-crime neighborhood. Well, this Court's ruling in Wood addressed some of those issues. In the Wood v. Ostrander case, there was a 24-hour shell station and a 24-hour 7-Eleven within two blocks. And this Court stated that it's not the province of the Court, essentially, to entertain those assumptions that would be necessary to state that lessened the danger. Well, it was a high-crime area in that case, and they said it in the opinion. They said it was a high-crime area, but... This area was not a high-crime area. It wasn't late at night, either. It was approximately 10 p.m., and there's no evidence in the record as to the degree or level of crime in that area. There's certainly nice areas in Orange and not-nice areas in Orange, but there's nothing in the record that indicates one way or the other in this case. But the Court in Wood, in discussing the 24-hour facilities that were nearby, said on motion for summary judgment, it's inappropriate to assume the facts you would have to assume. One, that the facilities would allow the inebriate into the facilities, that they would allow them to use any telephone or stay there until they sober up or until morning comes. It would require so many assumptions that the Court said, we're not going to entertain that kind of extraneous evidence. Does it make any difference that the person in that case was a woman late at night, not the driver? As far as the not the driver issue, I don't believe so. In both cases, there was a drunk driver, so the woman in Wood, she was in danger as a passenger of a drunk driver, just like my client was in danger as a passenger, or as a driver, who was intoxicated. But the triggering event is once... In Woods, the danger was of an increased crime neighborhood. There was no increased crime neighborhood here. He was hit on the freeway. So in this case, the increase in danger issue, I think, really comes down to the facts. He had been, miraculously, navigating his way home on his motorcycle. He was merely, I mean, it was just under five miles away from home. That's a few minutes on a motorcycle. The officer should have foreseen that instead of using the surface streets, he was going to get back on a freeway where there are all signs that say no pedestrians? Well, I think the evidence shows that my client could not take care of himself. He had impaired judgment. He ran a mile before he had his problem. Correct. That's pretty good for a drunk, if he couldn't stagger along to go a mile in a short period of time. There's not an indication that he actually ran that amount of time. Well, he went a mile, and he did it in a very short period of time, from the time the ticket was written. And they waited for the tow truck. And then he left the scene. I believe it was about .7 miles and approximately 15 minutes or so. That's a pretty good trip. It's a fair distance, I would agree. But the position my client was in after receiving the ticket and having his motorcycle impounded was he was more than an hour and a half away from home by foot. He's a pedestrian at night, extremely intoxicated, as everybody acknowledges in this case, other than Officer Howard, and unable to take care of himself. And your client, who lied about it? My client, who, there's nothing in the record that directly disputes that he was asked that question. And he answered, no, I have not been drinking, right? There's nothing in the record that disputes that. That's right. That just goes back, though, to the equitable estoppel issue. I don't think that it would be reasonable for an officer in Officer Howard's position to take Mr. Fernandez at his word, considering the obvious signs noted by the witnesses who saw Mr. Fernandez in the minutes immediately preceding the traffic stop and the point to blood alcohol immediately after the accident. So another issue I want to address is the qualified immunity on the no clear law. Defense has argued, or Officer Howard has argued, that plaintiffs didn't provide any clear law saying that this conduct would be illegal. This case is very similar to Wood. And if there is a tribal issue of fact, which the district court found, as to whether it was reasonable for Officer Howard to believe that my client was intoxicated, then it creates a tribal issue of fact as to whether the law was clearly established, because that creates a situation where my client is clearly in danger as a pedestrian, extremely intoxicated, and that is a situation that was created by Officer Howard once he took him off of the freeway and pounded his motorcycle and created a pedestrian. Would your position be different if the officer had said, OK, I'm going to give you a ticket, be careful, and good luck, and the guy jumped back on his motorcycle and took off and smashed into a car a quarter of a mile down the road? I think it would depend on the facts of what transpired during that stop, absolutely. If my client exhibited signs of intoxication and the officer put him back on his motorcycle, then absolutely. I think that would be a violation if he subsequently got in an accident and injured himself or somebody else. So your client wouldn't have any responsibility if he knew where you were intoxicated not to get back on? I don't think my client... So it would be the... So the officer's responsible here either way. He's responsible because he didn't arrest your client, didn't recognize that, but if he had let him go, then he would be responsible for anything that he did to anyone else, even though it's a voluntary act to get back in a vehicle and drive further. The affirmative conduct line of cases addresses when an officer changes the circumstances that the plaintiff or the individual finds themselves in. So tell me, just define the constitutional right that the officer violated. It's the right to be free from... Well, it's the right to bodily integrity, and any infringement on that right would require due process of law. It's not the right to be safe? Is that what you're saying? No? Well, officers have no affirmative duty to protect individuals from violence by third parties. However, if the officer can place... Do they have a duty to protect people from themselves? Is that what... It's the right... No. So what is the right? Because the Supreme Court tells us we have to very carefully, not broadly define... Right. So the duty... So it can't be, you have a right to be safe from any... Officers have to keep you safe. Right. So the exception comes in when the officer creates the danger. Ups the danger. There are certain cases that say it has to be a more dangerous situation than the one in which the officer found the individual in. Then that implicates the Constitution. And that's a question of fact. The district court, in a 10-page decision, went over all the issues, the case law, and accurately determined that those questions are questions of fact. Was he more dangerous on his motorcycle, seven minutes away from home, or an hour and a half away from home on foot when he's this drunk? That's a question for the jury, and I would submit on that. That's a question of fact, or is it a question of law? That's a question of fact, and... So a jury's going to say, no, he would have been better off if they had left him on his motorcycle, even though he might smash into somebody right down the road. I think that is a question of fact for the jury to decide, and in Wood, this court essentially allowed the plaintiff's claim to move forward, recognizing that under the facts presented by the plaintiff, a jury could... A rational jury could determine that the officer in Wood left the plaintiff in a position more dangerous than the one in which she was found. Does it matter that it's undisputed that your client was drunk, riding a motorcycle at high speeds, and that he was already in danger? Does that matter at all in the equation? Well, clearly he was in some degree of danger, as was the passenger... By his own volition. By his own volition, as... All the undisputed facts show that basically this had been going on the whole evening. Correct. But the officer doesn't know what happened before. The officer doesn't... All the officer knows is he said he didn't have anything to drink. Someone... He knows two people had tried to take his keys. He knows he kept getting on his bike. He knows what he's had to drink, but the officer doesn't. Well, I think the officer was faced with an obviously intoxicated person. So is that the danger the officer has to up? The level of intoxication? Well, he clearly was a danger when the officer stopped him. Correct. A danger... He was endangering other people out there by his driving conduct, by all of those things. The officer took the bike away, so he wasn't... He can't continue to drive, but you're saying that by leaving him there, he's more danger... In more danger than he was previously. I'm saying that's a question of fact for the jury. Okay. All right. Thank you. Thank you. All right. Now that you're back, we don't have a lot of time, but can you tell me what the right is? How do we define the right? Are you saying there's no constitutional violation, but even if there were, it wasn't clearly established? Are you saying there was a constitutional violation? Your Honor, it appears that there is a constitutional right at play here, and the right is not to place the claimant in worse a position than he was before the state action. Why isn't that a question of fact? Okay. Your Honor, no, it's not a question of fact. It's too easy to just say, hey, we're going to equate what this individual was doing at 120 miles an hour, splitting lanes on a heavy traffic freeway, with putting him on a side street. He lives in the same city, Orange. He's about 4.7 miles away from his house. I would say, Your Honor, that it's not a question of fact. It's a question of law because it is so obvious that no rational trier of fact would have said, hey, you know what? He would have been fine on top of his motorcycle going 120 miles an hour. And what the officer did I understand your position because when you came to the podium initially, you just said it's not clearly established. But Pearson has two prongs. So the first prong, are you saying you went on the first prong, but if you don't went on the first prong, you went on the second prong? Or are you saying you don't went on the first prong, but you went on the second prong? I'm just trying to, what's your argument here? I went on, we went on both prongs, Your Honor. The prong that is more clear in terms of not having been established by the appellee, and it is his burden to establish it, is that the law was clearly established that by what he was doing that night, he being the officer, he clearly violated the right of the motorcyclist. You say he did? No, Your Honor. He didn't. And there are no cases at that time, at the time of the stop, that would have alerted a reasonable officer that what he was doing, getting him off of his bike where he was going 120 miles an hour, lane splitting, was putting him in a more dangerous situation in town and country. Okay, I think we understand what your argument is. You're over your time. Thank you. Thank you both for your argument. This matter will stand.
judges: Kelly, Callahan, Bea